UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LUIS FELIPE DIAZ SANJURJO,

                Plaintiff,

   -v-                                              1:14-CV-85

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LEGAL AID SOCIETY OF NORTHEAST<br>   NEW YORK - ALBANY<br>Attorneys for Plaintiff<br>55 Colvin Avenue<br>Albany, NY 12206 | MICHAEL J. TELFER, ESQ.<br>SHUBH NIGAM MCTAGUE, ESQ. |
| OFFICE OF REGIONAL GENERAL COUNSEL<br>   SOCIAL SECURITY ADMINISTRATION<br>   REGION II<br>Attorneys for Defendant<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | VERNON NORWOOD, ESQ. |

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

Plaintiff Luis Felipe Diaz Sanjurjo ("Sanjurjo" or "plaintiff") brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of defendant Commissioner of Social Security's ("Commissioner" or "defendant") final decision denying his application for Supplemental Security Income ("SSI"). The parties have filed their briefs as well as the

Administrative Record on Appeal and the motions will be considered on the basis of these submissions without oral argument.[1]

## II. **BACKGROUND**

On January 22, 2008, Sanjurjo filed an application for SSI claiming a period of disability beginning on December 1, 2006. R. at 334-36. This application was initially denied on March 31, 2008. Id. at 131-33. At plaintiff's request, a hearing was scheduled before Administrative Law Judge ("ALJ") Carl Stephan on December 1, 2009, but was adjourned so that plaintiff could secure legal representation in this matter. Id. at 100-05, 137-38. The rescheduled hearing was then held on March 17, 2010. Id. at 77-90. Plaintiff, this time represented by an attorney, appeared and testified through a Spanish interpreter. Id.

On April 21, 2010, the ALJ rendered a written decision concluding that Sanjurjo was not disabled within the meaning of the Social Security Act (the "Act") from January 8, 2008 through the date of this decision. R. at 113-20. Plaintiff timely appealed this unfavorable disability determination to the Appeals Council, who granted his request for review, vacated the ALJ's decision, and remanded the claim for further consideration.[2] Id. at 125-29.

On April 19, 2012, the ALJ held a supplemental hearing in accordance with the remand order issued by the Appeals Council. R. at 35-58. Plaintiff, represented by an attorney, again testified through a Spanish interpreter. Id. This time, the ALJ also heard testimony from Vocational Expert ("VE") Peter Manzi. Id.

---

[1] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

[2] The Appeals Council concluded that the ALJ: (1) did not obtain all relevant treatment records; (2) failed to evaluate all of plaintiff's alleged impairments; (3) failed to consider all the opinion evidence; and (4) improperly articulated his residual functional capacity assessment. R. at 127.

On May 22, 2012, the ALJ rendered another written decision, again concluding Sanjurjo was not disabled within the meaning of the Act. R. at 17-25. This administrative denial became the final decision of the Commissioner on December 5, 2013, when the Appeals Council denied plaintiff's renewed request for review. Id. at 1-3.

On January 27, 2014, Sanjurjo filed this action seeking judicial review of the Commissioner's denial of benefits. Because the parties are familiar with the underlying facts, they are discussed only to the extent necessary to address plaintiff's appeal.

## III. DISCUSSION

### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. See id. Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's

independent review of the evidence may differ from the Commissioner's. Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

## B.  Disability Determination—The Five-Step Evaluation Process

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to

benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. Perez, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a

claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### C. **ALJ's Decision Following Remand**

The ALJ found Sanjurjo had not engaged in substantial gainful activity since January 8, 2008, the application date. R. at 19. The ALJ next found plaintiff's back impairments, respiratory impairments, and diabetes mellitus to be severe impairments. Id. Next, the ALJ concluded that plaintiff's combination of severe impairments did not meet or equal any of the "musculoskeletal" Listings. Id. at 20. The ALJ then determined plaintiff retained the RFC to perform "light work," except that:

> he can sit for up to 7 hours in an eight hour work day, and up to 2 hours at one time; stand for up to 2 hours in an eight hour work day, and up to 1 hour at one time; walk for up to 4 hours in an eight hour work day, and up to 2 hours at one time; occasionally climb stairs, stoop, crouch, crawl, kneel or balance; no climbing of ladders; no exposure to concentrated amounts of respiratory irritants; only occasional operation of foot controls; and no exposure to unprotected heights.

Id. at 20-21.

Based on these findings and Sanjurjo's age, education, and work experience, the ALJ determined jobs existed in significant numbers in the national economy that plaintiff could perform. R. at 24. Accordingly, the ALJ concluded plaintiff was not disabled within the meaning of the Act. Id.

### D. **Plaintiff's Appeal**

Sanjurjo argues the ALJ: (1) improperly weighed, or failed to discuss, certain medical opinions in the record; (2) incorrectly assessed his credibility; and (3) posed an incorrect hypothetical to the VE.

### 1. **Medical Opinions**

Sanjurjo first argues that the ALJ's RFC determination is not supported by substantial evidence because he failed to weigh, or even discuss, the opinions of several medical sources in the record in formulating his ultimate RFC assessment.

A claimant's RFC is an assessment of "what an individual can still do despite his or her limitations." Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (Mordue, C.J.) (citations omitted). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." Id. (citing 20 C.F.R. § 404.1545(a)). "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." Casey v. Comm'r of Soc. Sec., 2015 WL 5512602, at *10 (N.D.N.Y. Sept. 15, 2015) (Suddaby, J.) (adopting Report & Recommendation of Hines, M.J.).

In his written decision, the ALJ first gave "great weight" to the opinion of John W. Axline, M.D., a medical consultant who had reviewed "all available evidence in the medical record" as of October 2011. R. at 22; 833-43. The ALJ then discussed the opinion of consultative examiner Amelita Balagtas, M.D., finding her opinion on Sanjurjo's limitations to be consistent with Dr. Axline's "more detailed and specific opinion." Id. at 22; 420-24.

Finally, the ALJ discussed the opinion of consultative examiner Suraj Malhotra, M.D., finding certain aspects of his opinion supported by the medical evidence in the record but specifically declining to adopt Dr. Malhotra's limitations on standing and walking. Id. at 22; 689-98.

Sanjurjo argues that the ALJ's discussion of the medical evidence fails to include any mention of, let alone any narrative discussion regarding, the medical opinions of two of plaintiff's treating providers as well as the opinion of at least one consultative examiner whose opinion allegedly diverges from that of the doctors discussed above.

Sanjurjo first identifies Physician's Assistant John Sullivan, who opined in March 2009 that plaintiff was "moderately limited" in walking, standing, and sitting, and "very limited" in sitting, lifting, carrying, pushing, pulling, and bending. R. at 525. PA Sullivan treated plaintiff from June 2008 through January 2010. Id. at 468, 492.

Sanjurjo next identifies Denia Pedreira, M.D., who opined in June 2011 that plaintiff was "moderately limited" in walking and standing and "very limited" in lifting, carrying, pushing, pulling, bending, and climbing. R. at 818. Dr. Pedreira treated plaintiff from November 2010 to June 2011. Id. at 591, 824.

Third, Sanjurjo identifies Farag Aboelsaad, M.D., who opined in February 2009 that plaintiff "needs to avoid bending, twisting, [or] lifting heavy objects." R. at 447. Dr. Aboelsaad examined plaintiff at least three times between February and November 2009. Id. at 446-49.

The Commissioner retorts that Sanjurjo's contention regarding these medical opinions—namely, that the ALJ completely omitted any discussion of them in his written

decision—is "simply wrong." Def.'s Mem., ECF No. 15, at 15.[3] But defendant does not actually support this blanket denial with any guidance regarding where such a discussion can be found in the ALJ's written decision; rather, defendant attempts to articulate how Dr. Pedreira's and Dr. Aboelsaad's opinions are non-specific and/or otherwise consistent with the medical opinions the ALJ actually did bother to discuss.

There is a good reason the Commissioner has been forced to pursue this tactic on review: the ALJ completely neglected this trio of medical professionals in his written decision. And defendant implicitly concedes this fact, going on to argue that "[i]n any event, that an ALJ must consider all relevant evidence does not mean that the ALJ must specifically address each piece of evidence in his decision." Def.'s Mem. at 16. Defendant closes this portion of argument by noting that PA Sullivan "is not an acceptable medical source and, as such, his opinion is not entitled to deference." Id.

After careful consideration, it is concluded that the ALJ's failure to discuss the opinions of PA Sullivan, Dr. Pedreira, or Dr. Aboelsaad necessitates remand. First, "the ALJ committed reversible error when he failed to mention, consider, or discuss plaintiff's treatment" with Dr. Pedreira, a treating physician. Drollette v. Colvin, 2014 WL 2880022, at *7 (N.D.N.Y. June 23, 2014) (Suddaby, J.) (adopting Report & Recommendation of Hummel, M.J.). Even assuming, as the Commissioner suggests, that Dr. Pedreira's opinion was somehow sufficiently "non-specific" so as to preclude a meaningful evaluation, the appropriate course would have been for the ALJ to re-contact this treating source for clarification. Id.

---

[3] Pagination corresponds with CM/ECF.

Second, although the Commissioner argues that PA Sullivan "is not an acceptable medical source and, as such, his opinion is not entitled to deference," Def.'s Mem. at 16, the ALJ still had a "duty to address and discuss the opinion." Drollette, 2014 WL 2880022, at *6; see also 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); see also Saxon v. Astrue, 781 F. Supp. 2d 92, 103 (N.D.N.Y. 2011) (Mordue, C.J.) (directing ALJ to "address" an "other source" opinion and "provide an explanation of what weight, if any, he assigns to that opinion" on remand). And whether or not Dr. Aboelsaad is considered a treating or examining source, the same requirement of discussion and explanation applies to his opinion. Id.

Further, Sanjurjo correctly argues that the ALJ failed to assign any particular quantum of weight to Dr. Balagtas's opinion. "Unless there is a treating source opinion, which is given controlling weight, an ALJ's failure to explain the weight given to the opinion of a State agency medical consultant is legal error." Dutcher v. Comm'r of Soc. Sec., 2014 WL 2510557, at *5 (N.D.N.Y. June 4, 2014) (Suddaby, J.).

In sum, remand is necessary so that the ALJ can evaluate and weigh *all* of the relevant medical opinion evidence in this matter in accordance with the appropriate factors found in the Regulations. Because Sanjurjo's remaining challenges are predicated on conclusions drawn by the ALJ that may be impacted by his reconsideration of the medical evidence, they will not be directly addressed at this time. However, the ALJ is specifically directed to articulate whether, and to what extent, a thorough re-evaluation of the medical evidence alters his assessment of plaintiff's credibility.

## IV. **CONCLUSION**

The deficiencies in the ALJ's written decision leave a reasonable basis for doubting

whether the Commissioner applied the appropriate legal standards.

Therefore, it is

ORDERED that

1. Sanjurjo's motion for judgment on the pleadings is GRANTED in part;

2. The Commissioner's motion for judgment on the pleadings is DENIED;

3. The Commissioner's decision is VACATED; and

4. This matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion.

The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

_____
United States District Judge

Dated: December 1, 2015
      Utica, New York.